FILED
CLERK, U S. DISTRICT COURT

JAN 1 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJA TERMINE, et al., | CV 02-1114 SVW (MANx) |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR REIMBURSEMENT OF REASONABLE ATTORNEYS' FEES, STAYING PLAINTIFFS' MOTION FOR REIMBURSEMENT OF EXPERT FEES, AND REQUESTING FURTHER ACCOUNTING BY DISTRICT [177] |
| v. | |
| WILLIAM S. HART UNION HIGH SCHOOL DISTRICT and WESTMARK SCHOOL, | |
| Defendants. | |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

## I.   INTRODUCTION & BRIEF SUMMARY OF LITIGATION

Plaintiff Aja Termine ("Aja"), through her mother and co-Plaintiff Karen Termine (collectively "Plaintiffs"), sought a determination by the Court, pursuant to 20 U.S.C. § 1415(j), as to what was the appropriate "stay-put" placement for Aja during the pendency of Plaintiffs' due process hearing with Defendant William S. Hart Union High School District (the "District") before the California Special Education Hearing Office ("SEHO").[1]

---

[1] "Stay put" is the name commonly associated with the placement of a child during the pendency of any proceedings conducted pursuant to 20 U.S.C. § 1415, as set forth in 20 U.S.C. § 1415(j).

202

1    In an Order issued on August 20, 2002, the Court determined that

2  the proper stay-put placement for Aja was the interim placement

3  provided by the District pursuant to California Education Code §

4  56325(a).  In a Memorandum Disposition issued on March 12, 2004, the

5  Ninth Circuit remanded the case to this Court.  Subsequently, on

6  August 17, 2004, this Court issued an Order re Stay Put, instructing

7  the parties to brief the issue of whether the District's interim

8  placement was in conformity with Aja's last agreed-upon Individual

9  Education Program ("IEP").  Additionally, the Court joined the stay-

10  put case, Case No. CV 02-1114-SVW, with the parties' cross-appeals of

11  the SEHO decision, Case Nos. CV 02-7654-SVW and CV 02-7619-SVW.

12    In an Order issued on June 1, 2005 ("June 2005 Order"), the

13  Court found that (1) the District's interim placement was not in

14  conformity with Aja's last agreed-upon IEP; (2) the District's

15  interim placement was an improper stay-put placement for Aja during

16  the pendency of the due process hearing; and (3) the District must

17  reimburse the Plaintiffs for tuition paid between Aja's enrollment in

18  the District and the SEHO's decision, but only as to half of the

19  tuition because of Mrs. Termines' unreasonable conduct.

20    This motion seeks attorneys' fees reimbursement pursuant to the

21  Individuals with Disabilities Education Act ("IDEA") under 20 U.S.C.

22  § 1415(i)(3)(B).

23  **II.  ANALYSIS**

24    A.   Were the Termines the Prevailing Party?

25    This case is a combination of two separate actions: the

26  injunctive relief sought by Plaintiffs on the stay-put issue and

27  cross-appeals from the SEHO decision.  Defendants do not dispute that

28

2

1   Plaintiffs prevailed in the cross-appeals from the SEHO decision.

2   Defendants do, however, dispute whether Plaintiffs should be the

3   prevailing party for purposes of the stay-put action.  Having

4   considered the arguments, the Court finds that Plaintiffs should be

5   declared the prevailing party for the stay-put action: they received

6   relief and also changed the legal relationship of the parties.  See

7   Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human

8   Res., 532 U.S. 598, 603-05 (2001).

9       The injunctive relief sought by Plaintiffs on the stay-put

10  question has a convoluted history.  "Stay put" is the name commonly

11  associated with the placement of a child during the pendency of any

12  proceedings conducted pursuant to 20 U.S.C. § 1415, as set forth in

13  20 U.S.C. § 1415(j).  This history is readily ascertained by

14  reference to the Court's June 2005 Order.  The central issue in the

15  dispute regarding whether Plaintiffs should be considered the

16  prevailing party is that one of Plaintiffs' central legal arguments

17  was rejected.

18      In the June 2005 Order, the Court found that the District's

19  interim placement, which was also the District's stay put placement

20  for Aja, was inappropriate, both as an interim placement and as a

21  stay put placement.  Nonetheless, the District argues that Plaintiffs

22  are not the prevailing party with respect to the stay put action

23  because Plaintiffs' argument was not just that the interim placement

24  was inappropriate as the stay-put placement, but that the appropriate

25  stay-put placement — defined as the student's "then-current

26  educational placement at the time the dispute arose," 20 U.S.C. §

27  1415(j) — had to be the placement prior to the interim placement

28

because the interim placement could not properly be considered the
"then-current educational placement."  The Court rejected that
interpretation of the IDEA, holding instead that the stay-put
placement, while measured against the most recent IEP, which likely
came from the child's prior placement, was defined in reference to
the new district's resources and could include a placement consistent
with the IEP other than the immediately prior placement.  The Court
determined that the interim placement was an inappropriate stay-put
placement and that placement at Westmark was appropriate.  The
Westmark placement was appropriate, however, not because it was the
site of Aja's prior placement, but because it was consistent with
Aja's IEP — as other nonpublic schools might also be.

What all of this boils down to is that the focus of Plaintiffs'
specific legal reasoning — that Aja had to stay at Westmark because,
by the terms of the statute, Westmark was her "then-current
educational placement — was rejected.  Notwithstanding the Court's
rejection of one of Plaintiffs' central arguments for *why* the stay-
put placement was inappropriate, Plaintiffs achieved the relief they
sought and also successfully invalidated the District's argument
regarding the stay-put placement:  Aja stayed at Westmark during the
pendency of the dispute, Westmark was determined to be an appropriate
stay put placement, the proposed placement by the District was held
to be an inappropriate stay-put placement, and Plaintiffs were
awarded reimbursement of tuition for the time period of the dispute.
It can hardly be disputed that the District lost on the issue of the
stay put placement — it was found that the District had not provided
Aja with an appropriate stay-put placement.

4

1    In a case held by the Ninth Circuit to be applicable to IDEA

2  attorneys' fees, <u>Shapiro ex rel. Shapiro v. Paradise Valley Unified</u>

3  <u>Sch. Dist. No. 69</u>, 374 F.3d 857, 864-65 (9th Cir. 2004), the Supreme

4  Court stated that a prevailing party is one who has achieved some

5  relief from the court that changed the legal relationship between the

6  parties.  <u>Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health</u>

7  <u>& Human Res.</u>, 532 U.S. 598, 603-05 (2001).  In this case, Plaintiffs

8  received relief because they were reimbursed for the tuition at

9  Westmark.  While the Court's decision did not mandate that Aja needed

10  to be at Westmark during the pendency of the litigation (the stay-put

11  time period), the Court did mandate that only a nonpublic school

12  would be appropriate.  The District argued that Aja should be in the

13  interim placement, a public school.  Thus, Plaintiffs received relief

14  from the Court.

15    The Court's June 2005 Order also changed the legal relationship

16  between the parties.  Plaintiffs succeeded in defining stay-put

17  placement differently than the District advocated (though not exactly

18  as Plaintiffs advocated) and the Court declared the District's stay-

19  put placement would have been inappropriate for Aja.  While

20  Plaintiffs' specific legal arguments did not prevail, Plaintiffs did

21  succeed in having the District's proposed stay-put placement declared

22  inappropriate and in having the District reimburse Plaintiffs for the

23  tuition.[2]  Plaintiffs received relief and changed the legal

24

25  [2]Additionally, the District contends that, because of the timing of
the Court's determination that the interim placement was an

26  inappropriate stay-put placement — contemporaneous with the finding
that the interim placement was inappropriate, period — Plaintiffs did

27  not gain anything through the stay-put action and ended up in exactly
the same place as they would have been had they not pursued the stay-

28  put action.  This argument does not take into account the tuition

relationship between the parties.  Plaintiffs were the prevailing party on the stay-put action.

### B.  Are the Fees Reasonable?

Attorneys Steve Wyner ("Wyner") and Marcy Tiffany ("Tiffany") seek fees of $400 per hour for due process proceedings and $500 per hour for federal court proceedings.  Plaintiffs also seek rates of $125 per hour for paralegal time.  These rates are higher than the rates agreed to at certain times during the litigation.  For example, Wyner and Tiffany were initially billed at $325 per hour, then raised their rate $350, and then raised their rate to the current rate; legal assistants were initially billed at $115 per hour, and then the rate was raised to the current rate.  Despite Defendants' arguments to the contrary, these rates appear to be within the current market range for attorneys with the extensive experience that both Wyner and Tiffany have.[3]  Plaintiffs submitted numerous declarations of lawyers

_____

reimbursement gained through the stay-put action.  Given the changes in the Court's approach and the shifting Ninth Circuit law during this case, it is clear that the law in this area was unsettled before this case.  The Court's initial determination — that the interim placement was necessarily the stay-put placement, regardless of the appropriateness of the interim placement — would have denied Plaintiffs reimbursement for the Westmark tuition, even with the finding that the interim placement was not an adequate permanent placement.  Thus, it seems possible that had Plaintiffs not brought the stay-put action and forced a determination of the legal standards in that area, Plaintiffs would not have been reimbursed.

[3] The District argues that it is inappropriate for Wyner and Tiffany to have a higher fee for federal court litigation and that this higher fee is essentially a "multiplier," which is not allowed for fees under the IDEA.  Based on the supporting declarations submitted by Plaintiffs, it appears that, while $500 is on the higher end for civil rights litigation, it is still within the ballpark.  It makes sense that Wyner and Tiffany would charge less for administrative proceedings, which are at least procedurally less complicated, than for federal court litigation.
  The District argues that Wyner and Tiffany do not have the

in the relevant community who currently command rates close to or
higher than the rate currently charged by Wyner and Tiffany. (See
Crook Decl. ¶ 9 ($430 per hour); Sobel Decl. ¶ 3 ($550 per hour);
Klausner Decl. ¶ 5 ($525 per hour); Litt Decl. ¶ 11 ($575 per hour);
Vanaman Decl. ¶ 18 ($430 per hour).)   The Court considers Wyner's and
Tiffany's current rates to be reasonable.   Additionally, Plaintiffs
submitted three declarations in which the declarants' rates prior to
2005 are referenced.   These declarations are sufficient to show that
Wyner's and Tiffany's agreed upon rates during the bulk of the
litigation (either $325 or $350) were reasonable.   (See Klausner
Decl. ¶ 5 ($400 per hour prior to January 1, 2003); Litt Decl. ¶ 11
($500 per hour in 2001; $525 per hour in 2002); Vanaman Decl. ¶ 18
($380 per hour prior to July 1, 2005).

Plaintiffs argue that all the hours worked should be reimbursed
at the current rate to compensate Plaintiffs for the delay in
payment.   In the alternative, Plaintiffs argue that if the fees
awarded by the Court are based on the hourly rate in effect when the
work was done, the Court should award Plaintiffs interest (calculated

---

experience or expertise to support these fees.   That is not supported
by the documentation.
    The District argues that Wyner and Tiffany have not provided
proof that any clients actually pay these fees.   Wyner and Tiffany
have provided evidence that these fees are paid by school districts
in settlements and by clients for proceedings which are not covered
by the fee shifting part of IDEA.
    The District argues that the proper rate should be determined
based on the fee charged by its attorney.   Plaintiffs successfully
rebut this argument by pointing out that the District's lawyer
consistently represents the District and by pointing to Ninth Circuit
precedent that disapproves using a defendant's lawyer's rate when the
lawyer is a repeat player representing a government entity.   See
Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996).

1   at prime rate) on the fees to compensate for the delay in payment.[4]

2   While the Court does not find that either party unreasonably delayed

3   the litigation, the Court agrees that Plaintiffs' attorneys should be

4   compensated for the delay in payment that is inherent in the

5   reimbursement arrangements in civil rights actions.  See Chem. Bank

6   v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.),

7   19 F.3d 1291, 1305 (9th Cir. 1994).  Because Wyner's and Tiffany's

8   current fees for federal court litigation are approximately 65%

9   higher than their fees during the time of this litigation — which the

10  Court views as a significant increase — the Court finds that the more

11  appropriate method of compensating Plaintiffs' attorneys for the

12  delay in payment is by awarding the agreed upon fees plus interest at

13  the prime rate.

14      C.    Should Expert Fees Be Included?

15      The Ninth Circuit has not spoken to whether expert witness fees

16  are recoverable under the IDEA; other Circuits are split on the

17  issue.  The D.C., Seventh and Eighth Circuits have held that expert

18  fees are not recoverable, while the Second and Third Circuits

19  disagree.  Compare Goldring v. District of Columbia, 416 F.3d 70

20  (D.C. Cir. 2005) (not allowing expert fee recovery); T.D. v. LaGrange

21  Sch. Dist. No. 102, 349 F.3d 469 (7th Cir. 2003) (same); Neosho R-V

22  Sch. Dist. v. Clark, 315 F.3d 1022 (8th Cir. 2003) (same), with

23  Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 402 F.3d 332 (2d

24  Cir. 2005), cert. granted, 74 U.S.L.W. 3026 (U.S. Jan 6, 2006) (No.

25

26  [4] Plaintiffs correctly point out that if their rates are to be adjusted
    with interest (rather than by using their current billing rates), the
27  prime rate should be used, not the Treasury Bill rate.  See Chemical
    Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec.
28  Litig.), 19 F.3d 1291, 1305 (9th Cir. 1994).

1  05-18) (allowing expert fee recovery); <u>Arons v. N.J. Bd. of Educ.</u>,

2  842 F.2d 58 (3d Cir. 1988).  Because the Supreme Court recently

3  granted certiorari on this issue, <u>see</u> <u>Murphy</u>, 74 U.S.L.W. 3026, the

4  Court deems it imprudent to rule on this issue until the issuance of

5  the Supreme Court's decision.  The Court therefore STAYS this issue

6  pending the Supreme Court's decision in <u>Murphy</u>.

7      D.   <u>Should the Fees for this Request Be Included?</u>

8      The District does not contest that the fees for this request

9  should be included.  Fees incurred to petition the Court for fee

10 recovery are recoverable under § 1988.  <u>See</u> <u>Anderson v. Dir., Office</u>

11 <u>of Workers Comp. Programs</u>, 91 F.3d 1322, 1325 (9th Cir. 1996).  The

12 Court views the rationale behind this interpretation of § 1988 — that

13 to find otherwise would dilute the fees recovered, therefore

14 defeating the statutory purpose — equally applicable here.  <u>Id.</u>

15 Thus, fees for this fee request will be included in the recovery.

16     E.   <u>Is a Fee Reduction Appropriate?</u>

17     Attorneys' fees are properly calculated by first determining the

18 "lodestar" — the number of hours worked multiplied by the hourly rate

19 — and then making reductions from the lodestar as appropriate.[5]

20 <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 362-63 (9th Cir. 1996),

21 <u>amended by, reh'g en banc denied</u>, 108 F.3d 981 (9th Cir. 1997).  The

22 lodestar can then be reduced by certain factors.  <u>Id.</u>

23

24

25 [5] When a Plaintiff has only achieved nominal or de minimis success, the
   method is different.  <u>Morales v. City of San Rafael</u>, 96 F.3d 359,
26 362-63 (9th Cir. 1996), <u>amended by, reh'g en banc denied</u>, 108 F.3d
   981 (9th Cir. 1997).  In this case, Plaintiffs received reimbursement
27 of half the tuition and a clarification of the law; the success was
28 not nominal or de minimis.

1     The District argues that Plaintiffs' fees should be reduced

2 based on (1) the nature of the action; (2) partial success; (3)

3 unreasonable protraction of the litigation; and (4) time spent on

4 discrete tasks after the issuance of the SEHO decision.

5     The District argues that the fees are excessive given the

6 straightforward nature of the proceeding: the facts were not complex

7 and, according to the District, neither was the legal analysis.  The

8 District concedes that the interpretation of the stay-put placement

9 requirement was a novel legal question, as it must, considering that

10 this Court changed its position after the Ninth Circuit remanded in

11 light of a new decision.  Obviously, the law was unclear and shifted

12 during the course of the case.  Plaintiffs' lawyers' number of hours

13 is higher than the District's, but only by about 20%, which the Court

14 deems reasonable considering that Plaintiffs' attorneys had to file

15 opening and response briefs in the major actions in this Court and in

16 the Ninth Circuit, whereas the District's lawyers only filed

17 opposition briefs.

18     The District argues that Plaintiffs' fees should be reduced

19 because Plaintiffs' tuition reimbursement was reduced by 50% as

20 punishment for Ms. Termine's conduct as well as Plaintiffs' counsel's

21 intransigence with respect to the initial IEP meeting.  This Court

22 approved that reimbursement reduction.  The District argues for a

23 reduction on this basis because (1) the reduction was a loss for

24 Plaintiffs; and (2) because Ms. Termine and her counsel unreasonably

25 protracted the litigation.

26     The District contends that the reduction in the reimbursement

27 award was a loss for Plaintiffs and that accordingly the fees should

28

1   be reduced.  In response, Plaintiffs argue that not obtaining full

2   damages does not mean that they are not entitled to their full

3   attorneys' fees, that Plaintiffs achieved their primary goal (keeping

4   Aja at Westmark), and that the assessment issue was too intertwined

5   with other issues and the amount of time too trivial to be separated

6   out.  Plaintiffs are correct that not recovering the full amount of

7   damages requested does not necessarily constitute grounds for

8   reducing fees.  <u>Morales</u>, 96 F.3d at 362-63.  Additionally,

9   achievement of the public policy goal — for example, the

10  interpretation of the statutory requirement for stay-put placement —

11  can support not reducing the fee recovery because of a lower damages

12  recovery.  <u>Id.</u> at 363.  In the instant case, Plaintiffs achieved an

13  important part of their legal goal, a finding that the District's

14  stay-put placement was inappropriate.  Because Plaintiffs prevailed

15  in their argument that the District's stay-put placement was wrong

16  and clarified the law regarding stay-put placements, the Court does

17  not consider it equitable to reduce the fee recovery based on partial

18  success.

19      The District also argues that the fees should be reduced for the

20  same reason that the reimbursement was reduced: because Ms. Termine

21  and her counsel unreasonably protracted the front end of this dispute

22  by making unreasonable requests with respect to the initial IEP

23  conference with the District.  Plaintiffs argue that the IEP meeting

24  was unconnected with this litigation, but that is not entirely

25  accurate.  Plaintiffs' attorneys' billing records (those submitted to

26  the Court) appear to include the time period during which the SEHO

27  and this Court found that Plaintiffs and Plaintiffs' counsel

28

1  inappropriately protracted proceedings (October 21, 2001 through mid-

2  February 2002).  If practical to separate out the relevant time, the

3  Court deems it appropriate to reduce the fee recovery for those hours

4  spent delaying the initial IEP meeting with the District.  The

5  District should submit a detailed statement of the hours it believes

6  were spent delaying the initial IEP meeting with the District.

7  Plaintiffs will have an opportunity to respond.

8      The District also contends that time spent on discrete tasks

9  after the SEHO decision that were unrelated to the proceedings in

10 this case should not be included.  The Court agrees.  As more fully

11 detailed in Part III, the District is therefore ordered to submit a

12 detailed statement of the hours it believes were not spent on this

13 matter.  Plaintiffs will have an opportunity to respond.

14     F.   Evidentiary Objections

15     The District objected to almost every statement made in the

16 declarations submitted by Plaintiffs.  Most of these objections are

17 frivolous.  For example, the legal background and billing rate of

18 civil rights attorneys in Los Angeles is neither irrelevant nor

19 confusing; in fact, it is helpful.  The declarants profess personal

20 knowledge of the statements made, which establishes foundation.  The

21 opinion testimony objected to did not involve impermissible legal

22 conclusions or opinions but personal observations made by the

23 declarants (for example, that attorneys who accept cases on a

24 contingency basis charge more because of the risk; that the demand

25 for educational rights advocates is high).

26     The Court relied on statements by declarants regarding their own

27 hourly rates and their experience that it is difficult to find .

28

1   lawyers who will take education civil rights cases.  These statements

2   were all based on personal experience, were relevant, and had

3   foundation.  The District's objections are thus either without merit

4   or irrelevant.

5   **III. CONCLUSION**

6       The Court ORDERS that Plaintiffs be declared the prevailing

7   party on both claims.  The Court STAYS the motion with respect to

8   expert fee recovery.  The attorneys' fee recovery will be on the

9   basis of the agreed upon rate at the time the fees were incurred,

10   plus interest calculated at the prime rate.

11       The Court ORDERS that the District submit a detailed accounting

12   of any hours it believes (1) were spent delaying the initial IEP

13   meeting; and (2) were not spent on this matter and thus should be

14   excluded from the fee recovery.  The District must submit its

15   accounting no later than two (2) weeks from the date of this Order;

16   Plaintiffs' opposition is due two (2) weeks later; and the District's

17   reply is due one (1) week after Plaintiffs' opposition is filed.  A

18   hearing will be scheduled as necessary.

19

20       IT SO ORDERED.

21   DATED: _1/12/06_____

22                            STEPHEN V. WILSON

                                UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28