

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

ENTERED
CLERK, U.S DISTRICT COURT

AUG 7 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

AUG - 4 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AJA TERMINE, et al.,                )   CV 02-1114 SVW (MANx)
                                    )
                  Plaintiffs,       )   ORDER RE DEFENDANT'S FURTHER
                                    )   ACCOUNTING OF ATTORNEYS' FEES
        v.                          )   AND DENYING IN PART PLAINTIFFS'
                                    )   MOTION FOR FEES [177]
WILLIAM S. HART UNION HIGH          )
SCHOOL DISTRICT and WESTMARK        )   THIS CONSTITUTES NOTICE OF ENTRY
SCHOOL,                             )   AS REQUIRED BY FRCP, RULE 77(d).
                                    )
                  Defendants.       )
                                    )

I.    INTRODUCTION & BRIEF SUMMARY OF LITIGATION

      This case involved a dispute between Plaintiff Aja Termine

("Aja"), her mother Karen Termine (collectively "Plaintiffs") and

Defendant William S. Hart Union High School District ("Defendant")

over Aja's educational placements under the Individuals with

Disabilities Education Act ("IDEA").  The dispute began when Aja

transferred into the Hart School District in the fall of 2001.  On

December 27, 2001, Plaintiffs filed for an administrative due process

hearing before the California Special Education Hearing Office

("SEHO").  Plaintiffs requested that the SEHO issue a "stay-put"

order which would maintain Aja in her current placement until the

dispute was resolved.  However, SEHO denied the stay-put order.

1   Plaintiffs then sought a judicial determination by this Court as to

2   what was the appropriate "stay-put" placement for Aja.   In the

3   meantime, SEHO issued a decision regarding the parties' dispute on

4   July 3, 2002.   This Court then joined the parties' cross-appeals of

5   the SEHO case with the stay-put case.

6       On June 24, 2005, this Court entered Judgment for Plaintiffs.

7   Plaintiffs subsequently moved for attorneys' fees reimbursement

8   pursuant to the IDEA under 20 U.S.C. § 1415(i)(3)(B).   On January 13,

9   2006, this Court issued an order that in large part granted the

10  requested fees ("January Order").   However, in considering

11  Defendant's arguments that a fee reduction might be appropriate for

12  selected fees, this Court requested further accounting from the

13  Defendant before issuing a final decision regarding those fees.   This

14  order considers the further accounting by Defendant submitted in

15  response to the January Order.

16      As further explained below, the Court GRANTS Defendant's request

17  that the requested fee award be reduced by (1) the fees incurred with

18  respect to the Westmark settlement; and (2) the fees incurred on or

19  after January 24, 2004, the date of the 2004 SEHO decision that is

20  the subject of a case before Judge Otero.   The Court also DENIES

21  Plaintiffs' request for expert fees.

22  **II. ATTORNEYS' FEES**

23      In its opposition to Plaintiffs' motion for attorneys' fees,

24  Defendant argued that the fees should be reduced based on (1) this

25  Court's finding that Plaintiffs had unreasonably protracted the

26  proceedings by delaying Plaintiff's initial Individual Education

27  Program ("IEP") meeting, and (2) Plaintiffs' time spent on discrete

28

2

1 tasks after the SEHO decision that were unrelated to the litigation

2 with the Defendant.  This Court found that both contentions had some

3 merit and ordered Defendant to submit a detailed statement of the

4 hours it believes fall into those two categories.

5     A. <u>Fees spent delaying the initial IEP meeting with Defendants</u>

6     Under the IDEA, all state and local education agencies are

7 required to provide to students with disabilities free appropriate

8 public education.  20 U.S.C. § 1412.  Appropriate placements are

9 determined through the IEP process.  20 U.S.C. § 1414.  In an Order

10 issued on February 14, 2002, this Court determined that Plaintiffs

11 had unreasonably delayed the initial IEP meeting with Defendant.  A

12 brief summary of the facts that led to this finding follows.

13     Pursuant to a prior February 28, 2001, IEP with the Glendale

14 School District, Aja was enrolled for the 2001-2002 school year at

15 Westmark, a nonpublic school.  On October 3, 2001, Aja enrolled in

16 Defendant's district after the family relocated.  Under the IDEA,

17 Defendant was required to either provide placement in accordance with

18 the existing IEP, or formulate a new IEP.  In early October, 2001,

19 Defendant made several attempts to set up an IEP meeting with

20 Plaintiffs.  Receiving no response, Defendant held an IEP meeting on

21 October 18, 2001 without Plaintiffs present.  At the meeting,

22 Defendant determined that its internal programs were sufficient to

23 meet Aja's needs and therefore would not pay for Aja's current,

24 nonpublic placement at Westmark.  Consequently, Westmark informed

25 Plaintiffs that it would disenroll Aja from its program for lack of

26 payment.  Plaintiffs finally filed for a due process hearing with

27 SEHO on December 27, 2001.  On February 6, 2002, Plaintiffs filed an

28

1   application with this Court for a temporary restraining order and

2   preliminary injunction requiring Defendant to pay for Aja's placement

3   at Westmark.  On February 14, 2002, this Court denied the

4   application.

5       Among the findings in its February 14, 2002 Order, this Court

6   found that Plaintiffs had shown a clear intent to preclude any

7   possibility that a new agreed-upon IEP be created.  Plaintiffs did

8   not attend the Defendant's October 18th meeting, did not accept the

9   District's invitation to conduct another IEP meeting, and did not

10  immediately file for a SEHO due process hearing.  Plaintiffs did not

11  act until they realized that Defendant was not going to pay for Aja's

12  tuition at Westmark.  Thus, this Court concluded that Plaintiffs had

13  engaged in unreasonable delay by failing to communicate with

14  Defendant during the months of October, November and December 2001.

15      Ultimately, the IEP that Defendants initially sought to schedule

16  in October, 2001 did not occur until August 21, 2002.  Based on this,

17  Defendant has identified a total of $5,141.00 in fees and costs that

18  it argues resulted from Plaintiffs' delay.  In response, Plaintiffs

19  point to the plain language of this Court's January 13, 2006 Order.

20  It provides:

21      Plaintiff's attorneys' billing records (those submitted to the

22      Court) appear to include the time period during which the SEHO

23      and this Court found that Plaintiffs and Plaintiffs' counsel

24      inappropriately protracted proceedings (October 21, 2001 through

25      mid-February 2002).  If practical to separate out the relevant

26      time, the Court deems it appropriate to reduce the fee recovery

27

28

4

1    for those hours spent delaying the initial IEP meeting with the

2    District.

3    (January Order at 11-12.)  As Plaintiffs correctly point out,

4    Defendant failed to identify a single billing item in its accounting

5    that occurred during the relevant time period identified by this

6    Court.  All of the time entries identified by Defendant are dated

7    after March 8, 2002.  By its terms the January Order confined the

8    permissible fee reductions to time entries that occurred during the

9    period of inappropriate delay previously identified by this Court.

10   Thus, the January Order is only concerned with time entries made in

11   furtherance of delay from October 21, 2001 through mid-February 2002.[1]

12   Contrary to Defendant's assertion, it does not encompass time entries

13   reflecting efforts to schedule an IEP after mid-February, 2002 that

14   may or may not have been caused by the initial delay.

15       Because Defendant has not identified any time entries in the

16   relevant time period, Defendant's request for a reduction in the

17   total amount of $5,141.00 with respect to the delay in scheduling the

18   initial IEP meeting is DENIED.

19       B. Fees unrelated to the litigation with Defendant

20       Defendant has identified two categories of fees that it believes

21   are unrelated to this action: (1) fees related to Plaintiffs'

22   settlement with Westmark, and (2) fees related to Aja's placement for

23   the 2003-2004 school year.  Defendant alleges it is not responsible

24   for $4,760.51 in fees and costs related to the first category and

25   $15,298.02 in fees and costs related to the second category.

26

27   _____

     [1] Mid-February approximates the date this Court issued its February
28   14, 2002 order.

5

1       *1. Fees related to Plaintiffs' settlement with Westmark*

2           Plaintiffs named Westmark as an additional defendant after it

3   became apparent that Defendant did not intend to pay for Aja's

4   Westmark tuition.  Westmark moved to be dismissed from the case on

5   February 27, 2002.  However, the Court never ruled on this motion.

6   Plaintiffs and Westmark apparently settled in the spring of 2002;

7   Westmark has not been an active participant in the litigation since

8   that time.  According to Plaintiffs, Westmark allowed Aja to remain

9   in school while Plaintiffs' litigation with Defendant was pending

10  even though it was not being paid on a current basis.  Plaintiffs'

11  attorneys incurred $4,760.51 in fees and costs related to the

12  Westmark settlement.  The Westmark settlement remains private because

13  it was never filed with this Court.  However, Westmark was never

14  dismissed from the case and it still remains a defendant on the

15  record.

16      Defendant argues Plaintiffs cannot recover the fees relating to

17  the Westmark settlement because they were not a prevailing party with

18  respect to Westmark, as defined by the Supreme Court in <u>Buckhannon</u>

19  <u>Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598

20  (2001).  However, Defendant has not presented any authority showing

21  why Plaintiffs must be a prevailing party as to Westmark in order for

22  Plaintiffs to recover the fees from *Defendant*.  Indeed, Plaintiffs do

23  not argue that they prevailed over Westmark.  Instead, Plaintiffs

24  argue that they should be awarded fees for their settlement with

25  Westmark because Defendant was the reason Plaintiffs were forced to

26  incur any attorneys' fees with respect to Westmark.  Westmark was

27  named as an additional defendant only because of Defendant's failure

28

                                      6

1    to comply with the IDEA.  According to Plaintiffs, all fees related
2    to Westmark are a direct result of their litigation with Defendant.
3    Thus, the issue seems not to be whether Plaintiffs prevailed over
4    Westmark, but whether Plaintiffs' settlement negotiations with
5    Westmark were sufficiently related to their successful litigation
6    against Defendant to merit Defendant paying the fees for those
7    negotiations.

8         Plaintiffs' claims against Westmark and its claims against
9    Defendant clearly stemmed from a common set of facts, in that
10   Plaintiffs would not have had claims against Westmark if Defendant
11   had not refused to foot the Westmark bill for Aja.  However, this
12   causal relationship does not meet the Court's understanding of the
13   legal standard for relatedness for purposes of attorneys' fees.  The
14   relatedness requirement originated in Hensley v. Eckerhart, 461 U.S.
15   424 (1983).  Hensley held that a prevailing plaintiff cannot recover
16   attorneys' fees under 42 U.S.C. § 1988 for time expended on unrelated
17   claims.  461 U.S. at 434-35.  The Ninth Circuit and other courts have
18   expanded upon Hensley to hold that plaintiffs may be compensated for
19   unsuccessful stages of ultimately successful litigation, Cabrales v.
20   County of Los Angeles, 935 F.2d 1050, 1052 (9th Cir. 1991); for time
21   spent on matters outside the litigation effort that preserved a
22   litigation remedy, Gilbrook v. City of Westminster, 177 F.3d 839, 876
23   (9th Cir. 1999); for work with respect to a different party than the
24   paying defendant when that work was not directly related to the
25   plaintiff's claims against the paying defendant, Rode v.
26   Dellarciprete, 892 F.2d 1177, 1185 (3d Cir. 1990); Ark. Cmty. Orgs.
27   For Reform Now v. Ark. State Bd. of Optometry, 468 F.Supp. 1254,
28

1258-59 (E.D. Ark. 1979).  The common denominator in all of these

nuances of <u>Hensley</u> is that the awarded fees advanced the litigation

for which the plaintiff had been held the prevailing party.  The

Westmark settlement did not advance Plaintiffs' litigation against

Defendant — it was solely about tuition.  Accordingly, the fees

incurred with respect to the Westmark settlement shall be deducted

from the fee award.

  2. *Fees for time spent on discrete tasks after the SEHO decision*

  Finally, Defendant argues that Plaintiffs should not be allowed

to recover fees for time spent on Plaintiffs' efforts to enforce the

SEHO decision.  According to Defendant, Plaintiffs have requested a

total of $15,298.02 in fees and costs that are unrelated to the case

before this Court.  Specifically, Plaintiffs argue that these fees

are the subject of a case pending before Judge Otero, CV 04-2930 SJO

(CTx).  The case before Judge Otero involves substantially similar

facts and is largely a continuation of the case before this Court.

Thus, a brief outline of the relevant facts and how the cases fit

together follows.

  On July 3, 2002, SEHO issued its first decision with respect to

Aja's placement.  The SEHO decision was appealed to this Court ("2002

SEHO Decision").  The parties' appeal of the 2002 SEHO Decision to

this Court primarily concerned a determination of what was the proper

stay-put placement for Aja.  However, the 2002 SEHO Decision also

instructed the parties to convene a new IEP meeting for Aja so that a

permanent placement could be determined.  Two IEP meetings were held

after the 2002 SEHO Decision: one on August 21, 2002 and one on May

2, 2003.  Plaintiffs' explanation for the two meetings (which is not

1 supported by evidence but which Defendant does not contradict (or

2 acknowledge)) is that the August 21, 2002 meeting did not comply with

3 the instructions given in the 2002 SEHO Decision, thus necessitating

4 the second meeting in May 2003.[2]  A second IEP was held on May 2,

5 2003, which Plaintiffs seem to concede met the requirements of the

6 2002 SEHO decision.  Controversy between the parties continued,

7 apparently regarding the mandate of the May 2, 2003 IEP meeting,

8 leading to the January 29, 2004 SEHO decision ("2004 SEHO Decision"),

9 at which SEHO ruled in Plaintffs' favor.  As a result, Defendant

10 appealed portions of the 2004 SEHO Decision to Judge Otero.  In that

11 litigation, the Termines, as defendants, moved to dismiss the School

12 District's complaint.  On October 7, 2005, Judge Otero issued an

13 Order granting the Termines' motion to dismiss.  On October 14, 2005,

14 the Termines moved for attorneys' fees in that action.  However,

15 because the School District has appealed Judge Otero's decision to

16 the Ninth Circuit, Judge Otero has stayed the Termines' motion

17 pending resolution of the appeal.

18     Defendant argues that its liability for time entries related to

19 the 2002 SEHO Decision cannot extend past August 21, 2002, the date

20 of the first IEP meeting held pursuant to the 2002 SEHO Decision.

21 Plaintiffs, on the other hand, argue that they are entitled to fees

22 through September 2004, as all of these fees were incurred either to

23 have a meaningful IEP meeting, as mandated by the 2002 SEHO Decision,

24 or to try to enforce the IEP decided upon at the second IEP meeting,

25 the one on May 2, 2003.  As discussed below, the Court deems it

26 ───────────────

27 [2] The 2004 SEHO Decision found that Defendant improperly delayed this
meeting.  This finding was upheld by Judge Otero in his October 7,
28 2005 Order.

1  appropriate to allow fees up to the January 2004 SEHO Decision, but

2  not after that.  Fees incurred after the 2004 SEHO Decision, which

3  was the subject matter of the case before Judge Otero, are more

4  properly addressed by Judge Otero.

5      Federal courts may award attorneys' fees under 42 U.S.C. § 1988

6  for "time spent on administrative proceedings to enforce the civil

7  rights claim prior to the litigation."  N.C. Dept. of Transp. v.

8  Crest St. Cmty. Council, Inc., 479 U.S. 6, 15 (1986). "Moreover, even

9  if the prior proceeding is not a proceeding to enforce one of the §

10 1988 civil rights laws, the discrete portion of the work product from

11 the administrative proceedings that was both useful and of a type

12 ordinarily necessary to advance the civil rights litigation . . . can

13 be part of the attorney's fees awarded under § 1988."  Id. (internal

14 citations and quotations omitted); cf. Stewart v. Gates, 987 F.2d

15 1450, 1452 (9th Cir. 1993) (holding that post-judgment enforcement

16 work is compensable as long as it is useful and of a type that is

17 ordinarily necessary to secure compliance with the court's orders).

18     Under the standards articulated above, Plaintiffs are entitled

19 to compensation for their work in attempting to enforce the 2002 SEHO

20 Decision.  The primary issue is at what point Plaintiffs' enforcement

21 efforts were no longer useful and of a type necessary to advance the

22 purpose behind the civil rights litigation in this Court.  At both

23 the administrative and district court levels, the issue in this case

24 was the same - determining the proper placement for Aja.  The 2004

25 SEHO Decision found that Defendant had failed to offer or provide Aja

26 free appropriate public education ("FAPE") for the 2002-2003 school

27 year as described in the August 21, 2002 IEP, and that the failure to

28

1   provide FAPE continued for the 2003-2004 school year.  This finding

2   was upheld by Judge Otero in his October 7, 2005 Order granting the

3   Termines' motion to dismiss.  Specifically, Judge Otero found that

4   the School District denied Aja a FAPE program from August 21, 2002

5   (the date of the first IEP following the 2002 SEHO Decision) through

6   January 29, 2004 (the date of the 2004 SEHO Decision).

7       As discussed above, Defendant's view is that Plaintiffs should

8   only be able to recover fees through the first post-2002 SEHO

9   decision IEP meeting - that is, through August 21, 2002.  As is

10  apparent from the litigation that went before Judge Otero, however,

11  this August 21, 2002 meeting did not adequately deal with the

12  problems identified by the 2002 SEHO Decision.  Plaintiffs correctly

13  contend that the latter IEP meeting (in May 2003), as well as efforts

14  after May 2003 to enforce the IEP put in place in May 2003,

15  constitute work attempting to enforce the 2002 SEHO decision.

16  However, the 2004 SEHO Decision is the subject of the proceeding

17  before Judge Otero.  Accordingly, all fees incurred on or after the

18  date of the 2004 SEHO Decision — even if they do relate back to

19  enforcement of the 2002 SEHO decision — more properly belong in the

20  fees motion that Judge Otero will hear if the Ninth Circuit affirms

21  his decision.   The Court thus orders fees incurred on or after

22  January 24, 2004, the date of the 2004 SEHO decision, to be deducted

23  from the fee award.  Fees incurred between the 2002 SEHO decision and

24  the 2004 SEHO decision, however, may be included in the fee award.

25  ///

26  ///

27  ///

28

                                    11

### III. EXPERT FEES

In the January Order, the Court stayed the motion for fees as it pertained to Plaintiff's recovery of expert fees, pending the Supreme Court's decision on this question in <u>Arlington Central School District Board of Education v. Murphy</u>, 126 S. Ct. 2455 (2006). The Supreme Court has since held that plaintiffs may not recover expert fees under the IDEA. <u>Id.</u> at 2459-63. Accordingly, the Court DENIES Plaintiffs' request for expert fees.

### IV. CONCLUSION

The Court ORDERS that the requested fee award be reduced by (1) the fees incurred in connection with the Westmark settlement; and (2) the fees sought by Plaintiffs that were incurred on or after January 24, 2004. The Court DENIES Plaintiffs' motion for fees as it pertains to expert fees.

IT SO ORDERED.

DATED: _8/2/06_

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE