Priority Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

FILED
CLERK, U.S DISTRICT COURT
JAN - 4 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
JAN - 5 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJA TERMINE, et al., | CV 02-1114 SVW (MANx) |
| Plaintiffs, | ORDER RE TERMINES' DISMISSAL OF REMAINING CLAIMS, FINAL ACCOUNTING AND REQUEST FOR ENTRY OF FINAL JUDGMENT |
| v. | [209] |
| WILLIAM S. HART UNION HIGH SCHOOL DISTRICT and WESTMARK SCHOOL, | |
| Defendants. | |
| AND RELATED JOINED CASES | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

## I.  INTRODUCTION

This case involved a dispute between Plaintiff Aja Termine ("Aja"), her mother Karen Termine (collectively "Plaintiffs") and Defendant William S. Hart Union High School District ("Defendant") over Aja's educational placements under the Individuals with Disabilities Education Act ("IDEA"). The dispute began when Aja transferred into the Hart School District in the fall of 2001. On December 27, 2001, Plaintiffs filed for an administrative due process hearing before the California Special Education Hearing Office ("SEHO"). Plaintiffs requested that the SEHO issue a "stay-put"

213

order which would allow Aja to remain in her current placement until the dispute was resolved. However, SEHO denied the stay-put order. Plaintiffs then sought a judicial determination by this Court as to what was the appropriate "stay-put" placement for Aja.

On June 24, 2005, this Court entered judgment in favor of Plaintiffs. Plaintiffs subsequently moved for attorneys' fees pursuant to the IDEA under 20 U.S.C. § 1415(i)(3)(B). On January 13, 2006, this Court issued an order that in large part granted the requested fees ("January Order"). However, in considering Defendant's arguments that a reduction might be appropriate for specified fees, this Court requested further accounting from the Defendant before issuing a final decision regarding those fees.

In an August 4, 2006 order, this Court considered the further accounting by Defendant and granted its request that the requested fee award be "reduced by (1) the fees incurred in connection with the Westmark settlement; and (2) the fees sought by Plaintiffs that were incurred on or after January 24, 2004. The Court [also denied] Plaintiffs' motion for fees as it pertains to expert fees." (Order August 7, 2006 at 12.)

On October 27, 2006, Plaintiffs filed a requested fee award, purportedly reflecting the Court ordered reductions. On November 7, 2006, Defendant filed its objections to the revised request for fees. Defendants object to Plaintiffs' use of compound interest, as opposed to simple interest, in calculating their final requested award. (Def.'s Obj. at 1.) Defendants also contend that the requested fees are "grossly exaggerated" because Plaintiffs employed the current (and highest) prime rate of 8.25% ("Current Prime"), as opposed to

the "historical prime rates" [("Historical Prime")] which ranged from 4% in 2002 to the current interest rate of 8.25%. (Id.)

Additionally, Defendant objects to the $15,000 in fees for work performed after the Court took this matter under submission. Defendant objects to such fees "because (a) the Termines should not be awarded fees for the fee accounting [because it] contains irregularities [the use of the current prime rate and compound interest], and (b) the Termines' invoice reflects no deduction for fees incurred in arguments they submitted on the availability of expert fees [which this Court eventually denied]. (Id.)[1]

## II. DISCUSSION

### A. Use of Compound As Opposed to Simple Interest

In objecting to Plaintiffs' use of compound interest to calculate its final fee award, Defendant does not cite any law for the proposition that simple interest is the proper or preferred measure in such calculations. Research of the issue generally reveals that compound interest is the correct standard, as it more fully compensates the negatively impacted party for the delay in payment. See Am. Nat'l Fire Ins. Co. v.

---

[1] Defendant also "objects on foundational grounds," arguing that Plaintiffs "failed to proffer any declaration laying a foundation for their spreadsheets submitted in support of their fee claim." The Court notes that Plaintiffs have attached the declaration of Marcy Tiffany to their response to Defendant's objections. The declaration lays a proper foundation for the spreadsheets. Defendant "reserve[d] the right" to submit further objection to Plaintiffs' calculations, filed on November 21, 2006, but has not done so to date. Thus, Defendant's objection on this ground is overruled.

Yellow Freight Sys., 325 F.3d 924, 937-38 (7th Cir. 2003)("As a general rule, the decision whether to award compound or simple prejudgment interest is left to the discretion of the trial court ... [However,] compound prejudgment interest is the norm in federal litigation")(internal citations omitted); Evans v. City of Chicago, 1996 U.S. Dist. LEXIS 18388, at *13 (D. Ill. December 10, 1996)("To put plaintiffs' attorneys in the position they would have occupied but for the delay, we must compound the interest"); cf. 28 U.S.C. § 1961 (b)(post judgment interest "shall be computed daily ... and shall be compounded annually"). In light of the foregoing authority, the Court finds Plaintiffs' use of compound interest proper. Thus, Defendant's objection on this matter is overruled.

B.  Use of the Historical as Opposed to the Current Prime Rate

Defendant next argues that Plaintiffs' attorneys "grossly exaggerated" their fees by using the current prime interest rate of 8.25%, as opposed to the variable historical rates. Again, Defendant does not cite any law in support of its objection. Nonetheless, the Court believes that the use of the historical prime rates (when the district court chooses to award the historical rates with a prime rate enhancement) is the preferable approach because it more closely "put[s] plaintiffs' attorneys in the position they would have occupied but for the delay." Evans, 1996 U.S. Dist. LEXIS 18388 at *13. Under this approach, Plaintiffs' lawyers would not only recover their agreed upon fees, but an amount that is enhanced by

compounding interest based (initially) on the prime rate at the time those fees were first incurred.

Thus, counsel would recover a quantity of fees enhanced to reflect the legal interest those monies would have generated were they timely paid. This approach fully compensates counsel without permitting a windfall by using the current prime rate as to all fees incurred.

Additionally, this computation would assure counsel the recovery of their "market rates" throughout the litigation. See Anderson v. Director, Office of Workers Compensation Programs, 91 F.3d 1322, 1324 (9th Cir. 1996)( "The [Supreme] Court reasoned that attorneys' fees 'are to be based on market rates' and such rates are based on the assumption that bills will be paid reasonably promptly; delays in payment thus deprive successful litigants of the market rates.")(quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)). Again, this computation (using the historical prime rates) more accurately mimics the "market rates" of the attorneys' fees than the use of the current prime rate.

Lastly, while clear legal authority on this issue is scant, the few cases that have spoken on the issue support the Court's position. See In re Oil Spill by The Amoco Cadiz, 954 F.2d 1279, 1333 (7th Cir. 1992)("[I]t is necessary to use the rates in force during the case and not whatever rate prevails at the end"); Shakman v. Democratic Org., 844 F. Supp. 422, 426 (D. Ill. 1994) ("[T]he applicable [prime] rate is the market rate throughout the litigation - 'when the defendant had the

use of money that the court has decided belongs to the plaintiff - not the going rate at the end of the case'") (quoting In re Oil Spill by The Amoco Cadiz, 954 F.2d at 1332).

Thus, in awarding the attorneys' fees, this Court will use the historic prime rate to account for the delay in payments. Plaintiffs' counsel has supplied the calculations applying the historical prime rate, and the Court approves their use.[2]

### C. Fees Incurred Regarding the Instant Application

Defendant finally argues that plaintiffs' counsel should not be awarded $15,000 in fees for work performed after the Court took this matter under submission. Defendant objects to such fees "because (a) the Termines should not be awarded fees for the fee accounting [because it] contains irregularities [the use of the current prime rate and compound interest], and (b) the Termines' invoice reflects no deduction for fees incurred in arguments they submitted on the availability of expert fees [which this Court eventually denied]."

First, the Court does not believe that the alleged irregularities warrant the denial of fees for the work performed on the fee accounting. Indeed, the Court cannot agree that the fee accounting contains irregularities. Plaintiffs' lawyers properly compounded the interest, as discussed above, and their use of the current prime rate does not rise to the level of an irregularity. Plaintiffs' lawyers

---

[2] Defendant has also failed to file any objection to Plaintiff's calculation using the historic prime rate, which this Court interprets as a concession of the calculation's accuracy.

may have been mistaken as to the proper prime rate calculation, but their actions were not surreptitious or misleading. A cursory glance at the accounting documents reveals the use of the current prime rate, and while the Court opts to employ the historical prime rate, it will not penalize the Plaintiffs' lawyers for their action.

Second, Defendant argues that Plaintiffs' counsel should not be granted their fees in connection with the preparation of the fee accounting because their "invoice reflects no deduction for fees incurred in arguments they submitted on the availability of expert fees," which this Court held are not warranted in this case. Plaintiffs respond that a reduction in fees is not warranted because the work performed in the unsuccessful pursuit of expert fees is "inseparable from that performed in furtherance of the successful claims." (Response at 3.)

The Court cannot agree with Defendant's position. The Court has held that Plaintiffs are the prevailing party, and therefore are entitled to an award of <u>reasonable</u> fees expended in litigating the fees motion itself. The Supreme Court has recently held in <u>Arlington Sch. Dist. Bd. of Educ. v. Murphy</u>, 126 S. Ct. 2455 (2006), that Plaintiff cannot recover expert fees, but this determination resolved a circuit split. It was wholly reasonable for Plaintiffs to seek the recovery of such expert fees in light of the then-existing circuit split. As a result, the Court will not impose any reduction on the approximately $15,000 in fees expended since March 2006.

**III. CONCLUSION**

For the reasons discussed above, the Court AWARDS Plaintiffs' attorneys' fees in the amount of **$729,038.64**, which reflects the historical prime rate. This amount also includes the award of costs in the amount of $43,961.23. Additionally, Plaintiffs' remaining claims against defendants Westmark School and Marty Lieberman are hereby DISMISSED.

IT IS SO ORDERED

DATED: 1/4/07

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE